1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

SAN DIEGO COASTKEEPER, a California non-profit corporation, COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a California non-profit corporation,

          Plaintiffs,

    vs.

REPUBLIC SERVICES, INC., a Delaware corporation; TAYMAN INDUSTRIES, INC., a California corporation; and ALLIED WASTE SYSTEMS, INC., a Delaware corporation,

          Defendants.

**Civil Case No.** 3:19-cv-2219-CAB-MSB

**CONSENT DECREE**

**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)**

## CONSENT DECREE

The following Consent Decree (or "Agreement") is entered into by and between San Diego Coastkeeper ("Coastkeeper") and Coastal Environmental Rights Foundation ("CERF") (collectively, "Plaintiffs"), and Tayman Industries, Inc., and Allied Waste Systems, Inc. (collectively, "Defendants").  The entities entering into this Consent Decree are each an individual "Party" and collectively the "Parties."

**WHEREAS**, Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in San Diego, California;

**WHEREAS**, Coastkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of San Diego County from all sources of pollution and degradation;

**WHEREAS**, CERF is a non-profit organization founded by surfers in North San Diego County and active throughout California's coastal communities;

**WHEREAS**, CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents, and contends that one of CERF's primary areas of advocacy is water quality protection and enhancement;

**WHEREAS**, Tayman Industries, Inc. is the Owner and/or Operator of the Facility located at 5692 Eastgate Drive, San Diego, California, 92121, hereinafter referred to by the Parties as the "San Diego Eastgate Hauling Facility";

**WHEREAS**, Allied Waste Systems, Inc. is the Owner and/or Operator of the Facilities located at 8364 Clairemont Mesa Blvd., San Diego, California, 92111, hereinafter referred to by the Parties as the "San Diego Hauling Facility" and at 881 Energy Way, Chula Vista, California, 91911, hereinafter referred to as the "Chula Vista Hauling Facility";

**WHEREAS**, the San Diego Eastgate, San Diego, and Chula Vista Hauling Facilities are collectively referred to herein as the "Hauling Facilities";

**WHEREAS**, Plaintiffs contend that their members live and/or recreate in and around waters which Plaintiffs' members allege receive discharges from the Hauling Facilities, including specifically the San Clemente Canyon Creek, Rose Creek, Carroll Canyon, Soledad Canyon, Otay River, Los Peñasquitos Lagoon, Mission Bay, San Diego Bay, and the Pacific Ocean;

**WHEREAS**, the discharges from the Hauling Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit"), and as amended by Order No. 2014-0057-DWQ ("2014 Storm Water Permit"), and as further amended by Order No. 2015-0122-DWQ incentivizing on-site storm water capture and use ("2018 Storm Water Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on August 27, 2019, Plaintiffs sent Defendants, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the San Diego Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the 1997 and 2014 Storm Water Permits at the Hauling Facilities;

**WHEREAS**, on November 21, 2019, Plaintiffs filed a complaint against Defendants in the United States District Court, Southern District of California (Case No. 3:19-cv-2219-CAB-MSB), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the 1997 and 2014 Storm Water Permits at the Hauling Facilities ("Complaint");

**WHEREAS**, Plaintiffs allege Defendants to be in violation of the substantive and procedural requirements of the 1997 Storm Water Permit, the 2014 Storm Water Permit, and the Clean Water Act with respect to the Hauling Facilities;

**WHEREAS**, Defendants deny all allegations in the Notice Letters and Complaint including those relating to the Hauling Facilities;

**WHEREAS**, Plaintiffs and Defendants have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.    Venue is appropriate in the Southern District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Hauling Facilities are located within this District;

3.    The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.    Plaintiffs have standing to bring this action;

5.    The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.    OBJECTIVE**.

6.    It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq*., and to resolve those issues alleged by Plaintiffs in their Complaint. In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree and to comply with the requirements of the 2018 Storm Water Permit and all

applicable provisions of the Clean Water Act. Specifically, on or before April 30, 2021, Defendants agree to implement on-site Best Management Practices ("BMPs") for capture and use, infiltration, and/or evapotranspiration of storm water associated with industrial activities and authorized non-storm water discharges ("NSWDs") at the Hauling Facilities to comply with Attachment I to the 2018 Storm Water Permit (the "On-site Compliance Option"). Defendants may also include BMPs that capture and divert the required storm water runoff volumes to a publicly owned sanitary sewer treatment facility. To demonstrate compliance with this Consent Decree, a California licensed professional engineer shall certify (with a stamp and wet signature) that all hydraulic calculations and operational practices at each of the respective Hauling Facilities will comply with the On-site Compliance Option.

## II.    AGENCY REVIEW AND TERM OF CONSENT DECREE.

7.    Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendants if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

8.    The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

9.    This Consent Decree shall terminate three (3) years after the Effective Date unless Early Termination is triggered pursuant to paragraph 10 of this Agreement (the

earlier of which shall be the "Termination Date" as used in this Consent Decree).

10. This Consent Decree will terminate early ("Early Termination") in the following circumstances:

10.1 As to a Defendant if that Defendant ceases its operations at any of the Hauling Facilities, transfers its operations at the Facility to another entity, is no longer subject to the 2018 Storm Water Permit, or files a Notice of Termination via the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") pursuant to the 2018 Storm Water Permit Section II.C.1, and the Notice of Termination is accepted by the State or Regional Board; or

10.2 Otherwise by mutual agreement of the Parties after Notice to the Department of Justice.

11. Plaintiffs may conduct an inspection of the Hauling Facilities up to forty-five (45) days prior to the Termination Date. The inspection shall be conducted according to the rules applicable to Annual Site Inspections described in paragraphs 23 and 24 below.

## III. COMMITMENTS OF THE PARTIES.

### A. Storm Water Pollution Control Best Management Practices.

12. Defendants shall maintain and/or develop and implement appropriate BMPs necessary to comply with the Storm Water Permit as provided herein.

13. The BMPs that Defendants plan to maintain and/or develop and implement for the Hauling Facilities to comply with the On-site Compliance Option are generally described in Exhibit A.

### B. Discharge Locations and Storm Water Sampling.

14. Discharge Locations. The current storm water sample locations ("Discharge Locations") for the Hauling Facilities are identified in Exhibit B. Should the Discharge Locations change from what is presently depicted on Exhibit B, Defendants will provide Plaintiffs with an updated exhibit.

15. Sampling. The following storm water monitoring procedures shall be implemented at the Hauling Facilities:

15.1 _Discharges_. During the life of this Agreement, Defendants shall collect samples from all Discharge Locations at the Hauling Facilities of any storm water discharges or any NSWDs or any discharges from stored or contained storm water from the Hauling Facilities, pursuant to Section XI.B.4 of the 2018 Storm Water Permit.

15.2 _Parameters_. Defendants shall analyze each storm water sample collected from a Discharge Location, pursuant to paragraph 15.1, for the parameters set forth in the below Table 1 Numeric Levels.

15.3 _Laboratory_. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Agreement.

15.4 _Detection Levels_. Defendants shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below Table 1 Numeric Levels.

15.5 _Hold Time_. All samples collected from the Hauling Facilities shall be delivered to the laboratory as necessary, using reasonable best efforts, to ensure that sample "hold time" is not exceeded for each contaminant sampled.

15.6 _Results_. Defendants shall request that sample analysis results be reported to them as soon as possible without incurring "rush" charges.

15.7 _Reporting_. Defendants shall provide Plaintiffs with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all samples described and taken in accordance with the samples identified in paragraph 15.1 collected at the Hauling Facilities, within ten (10) business days of receiving the results.

**C.   Reduction of Pollutants in Discharges.**

16.   _Sampling Parameters_. Defendants shall sample all off-site discharges described in section 15.1 for each of the parameters in Table 1. The Numeric Levels are provided in the table for reference purposes, except in the event Defendants are unable to implement the On-site Compliance Option for a Hauling Facility. A Defendant shall not be required to submit an Action Plan for a Hauling Facility for an exceedance of any

Numeric Level, except as provided herein.

**Table 1**

| Pollutant | Numeric Level |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Oil and Grease | 15 mg/L |
| Total Recoverable Zinc* | 0.26 mg/l |
| Total Recoverable Copper* | 0.0332mg/l |
| Total Recoverable Aluminum | 0.750 mg/L |
| Total Recoverable Iron | 0.3 mg/L |
| Total Recoverable Lead* | 0.262 mg/l |
| Enterococcus | 61 MPN/100 mL |
| Fecal Coliform | 400 MPN/100 mL |
| Chemical Oxygen Demand | 120 mg/L |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L |
| Total Phosphorous | 0.1 mg/L |
| pH | 6.5-8.5    s.u. |

\* The Numeric Levels for metals marked with an asterisk are hardness dependent. The final values shall be the more conservative of the NALs and the hardness-adjusted California Toxics Rule values.

17.    Action Plan.  If Defendants are unable to demonstrate compliance at a Hauling Facility with the On-site Compliance Option by April 30, 2021, Defendants shall prepare an Action Plan for the Hauling Facilities for compliance with the On-site Compliance Option or, if such option cannot be feasibly obtained by October 1, 2021, an Action Plan for implementing further BMPs designed to reduce the Numeric Level of the pollutants in Table 1 to at or below the limits in Table 1.[1]  When required, a proposed Action Plan must be submitted to Plaintiffs within forty-five (45) days after April 30, 2021 if Defendants have not by then certified (as provided in section 6) that they have the on-site storm water storage capacity and operational practices in place to comply with the On-site Compliance Option.

17.1 Action Plan Requirements Where On-Site Compliance Option is Not Feasible.  The Action Plan shall include at a minimum: (1) the identification of the

pollutant(s) causing the Action Plan Triggering Event; (2) an assessment of the potential source of each pollutant discharged that caused the Action Plan Triggering Event; (3) the identification of additional BMPs, if any, that will be designed and implemented for the location(s) of the exceedance discharge in an effort to prevent future exceedances of parameters that triggered the Action Plan (including the possibility of a treatment control BMP, which would be designed to meet the 2018 Storm Water Permit's Design Storm Standard pursuant to Section X.h.6); and (4) time schedules for implementation of proposed BMPs (if any).  Submitting an Action Plan that does not address all of the requirements in this paragraph will be considered a missed deadline after dispute resolution, if any.

17.2  <u>Action Plan Review</u>.  Plaintiffs shall have thirty (30) days upon receipt of Defendants' proposed Action Plan to approve or provide comments to Defendants on the proposed Action Plan.  If Plaintiffs provide Defendants comments on the proposed Action Plan, Defendants shall have thirty (30) days from receipt of Plaintiffs' comments, unless Defendants request and Plaintiffs agree to an extension, which agreement shall not be unreasonably withheld, to either incorporate Plaintiffs' material comments into the Action Plan and seek Plaintiffs' approval of the modified Action Plan or another round of comments if mutually agreed, or, if Defendants decline to accept one or more of Plaintiffs' material comments, provide Plaintiffs with a written explanation of the grounds for such rejection.  Any disputes over the Action Plan, including any requested extensions, shall be resolved pursuant to the Dispute Resolution Procedures of this Agreement, set out in Section VI below.  Defendants shall not be required to begin implementation of any Action Plan until Plaintiffs have approved the Action Plan, until the dispute over the Action Plan has been resolved through the Dispute Resolution Procedures, or until mutual agreement of the Parties, whichever is later ("Implementation Triggering Event").

17.3  <u>Action Plan Implementation Timeline</u>.  The time schedule(s) for implementation of BMPs pursuant to any Action Plan shall ensure that all BMPs are implemented as soon as possible.  Unless the Parties agree during the Action Plan Review

process to a longer time period based on the time needed to design, permit, procure, and/or install the necessary equipment, Defendants will implement new BMPs in an Action Plan within three (3) months of the Implementation Triggering Event for BMPs not requiring permitting or approval from agencies or other necessary parties (including, but not limited to, City of San Diego, City of Chula Vista, and the County of San Diego), and within six (6) months of the Implementation Triggering Event for BMPs requiring permitting or approval ("Presumptive Implementation Deadlines"). If Defendants' Action Plan includes BMPs which require QSE sampling for calibration pursuant to paragraph 17.4, the Action Plan implementation timeline shall indicate that discharge monitoring is necessary and will take place when the first QSE following completion of the BMP occurs. To the extent Defendants believe they need additional time beyond the Presumptive Implementation Deadlines to complete the implementation of new BMPs pursuant to an Action Plan, or to the extent that, pursuant to paragraph 36, Defendants' performance within the Presumptive Implementation Deadlines is impossible, illegal, or otherwise prevented by circumstances beyond the Defendants' control, including due to Force Majeure, Defendants will request in writing an extension from Plaintiffs. Plaintiffs agree that they will not unreasonably withhold agreement to extend any implementation deadlines. Any disputes over the Action Plan implementation timeline, including any requested extensions, shall be resolved pursuant to the Dispute Resolution provisions of this Agreement, set out below in Section VI of this Agreement.

17.4 <u>Action Plan QA/QC</u>. If necessary, any BMP quality assurance and quality control ("QA/QC"), including QSE sampling required to calibrate advanced treatment BMPs, shall occur before the Presumptive Implementation Deadline, if feasible. In the event a QSE does not occur after the Action Plan BMPs are fully operational and before expiration of the Presumptive Implementation Deadline (or any mutually agreed upon extension thereto), Defendants' Presumptive Implementation Deadline shall be automatically extended until the earlier of: (1) 30 days after the next QSE after the Presumptive Implementation Deadline, or (2) the date of receipt of laboratory results from

samples taken during the next QSE after the Presumptive Implementation Deadline. Any Table 1 exceedances occurring prior to the Presumptive Implementation Deadline, prior to any automatic extensions under this paragraph, or prior to any mutually agreed upon extension, shall not constitute an Action Plan Triggering Event.

17.5 Disputes regarding the adequacy of a particular aspect of the Action Plan shall not impact the schedule for implementing any other unrelated aspect of the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the Dispute Resolution provisions of this Agreement, set out in Section VI below, which shall not be subject to stipulated penalties.

17.6 Defendants shall contact Plaintiffs to request an extension of any deadline set forth in this Agreement, if necessary, prior to the deadline at issue. Failure to request an extension, if necessary, in this timeframe will be considered a missed deadline. Plaintiffs' consent to Defendants' requested extension shall not be unreasonably withheld.

**D.      Visual Observations.**

18.     Until the Termination Date of the Agreement, Defendants shall conduct and document visual observations required by the Storm Water Permit and as more fully described in the Hauling Facilities' SWPPPs.

**E.      Employee Training.**

19.     Within sixty (60) days of the Effective Date, Defendants shall conduct employee training in order to familiarize employees at the Hauling Facilities with the requirements of the Storm Water Permit and shall include in particular, the requirements contained in this Agreement.

**F.      Storm Water Pollution Prevention Plan and Monitoring and Reporting Plan.**

20.     Within ninety (90) days of the Effective Date of this Consent Decree, Defendants shall revise the Hauling Facilities' SWPPPs and/or M&RP as applicable to include:

20.1 BMPs that are currently utilized at the Hauling Facilities;

20.2 BMPs identified, developed, and implemented pursuant to this

Agreement and/or the Storm Water Permit;

20.3 The specific individual(s) or position(s) responsible for compliance with the Storm Water Permit; and

20.4 A detailed site map that includes at a minimum all information required by the Storm Water Permit.

21. <u>Action Plan SWPPP Revision</u>.  Defendants shall revise their Storm Water Pollution Prevention Plans ("SWPPPs") and/or Monitoring & Reporting Plans ("M&RP"), if applicable, within forty-five (45) days of completion and implementation of additional BMPs set forth in the Action Plan.  Defendants shall notify Plaintiffs via email when the Action Plan has been completely implemented, and the SWPPP and/or M&RP have been revised, if such revisions are necessary.

22. Plaintiffs shall provide Defendants with reasonable and material comments, if any, regarding whether Defendants are or will be in compliance with this Consent Decree within thirty (30) days of receipt of any revised SWPPP and M&RP.  Within forty-five (45) days of receiving comments from Plaintiffs, Defendants shall incorporate Plaintiffs' reasonable and material comments regarding compliance with the requirements of this Consent Decree into any revised SWPPP and/or M&RP or shall justify in writing to Plaintiffs why any comment is not incorporated.  Any disputes as to the adequacy of the SWPPP and/or M&RP under this Consent Decree shall be resolved pursuant to the Dispute Resolution Procedures of this Agreement set forth in Section VI below.

## IV. <u>COMPLIANCE MONITORING AND REPORTING.</u>

23. <u>Annual Site Inspections</u>.  Each Reporting Year until the Termination Date of this Agreement, Plaintiffs and their representatives may conduct up to one (1) noticed site inspection per Reporting Year ("Annual Site Inspection") at each Hauling Facility.  The Annual Site Inspection shall be limited to (1) an inspection of the storm water containment systems, including BMPs, improvements, and industrial operations that come into contact with storm water; and (2) collection of storm water samples from QSEs that result in a discharge at a Discharge Location if the On-site Compliance Option is not implemented

and functional by April 1, 2021.  The Annual Site Inspection shall occur during normal business hours, and Plaintiffs shall provide Defendants with three (3) business days' notice of an intended inspection.  Plaintiffs will confirm with Defendants at least twenty-four (24) hours prior to the start of an Annual Site Inspection that there is sufficient rainfall such that Plaintiffs intend to conduct their Annual Site Inspection during a QSE.  Plaintiffs will make efforts to conduct their Annual Site Inspection during a QSE, but a lack of a QSE will not prevent Plaintiffs from conducting an Annual Site Inspection.  During all Annual Site Inspections, Plaintiffs' representatives shall wear safety goggles, hard hats, vests, steel toed boots, and any other appropriate personal protective equipment and remain in the presence of Defendants' representatives at all times and Plaintiffs shall sign a standard Release and Waiver Agreement with Defendants, including but not limited to, covering any personal injury or damage that Plaintiffs, their representatives, or assigns could incur during or as a result of an Annual Site Inspection, and limiting use of videographic, photographic, or other recordings to the Dispute Resolution Process.  Plaintiffs' inspection team shall consist of no more than six (6) persons.  Notice of any inspection under this paragraph shall be provided by telephone and electronic mail to all of the following individuals for each Defendant:

> For Defendants:
>
> Scott Sterner
> General Manager
> 8364 Clairemont Mesa Blvd.
> San Diego, CA 92111
> (619) 449-9026
> ssterner@republicservices.com
>
>
> Judith George / Tom Ulreich-Power
> General Counsel's Office
> Republic Services
> (480) 493-1738
> Jgeorge4@republicservices.com
> Tulreich@republicservices.com

1

2   Thomas Bruen
    Law Offices of Thomas M. Bruen, P.C.
3   (925) 295-3137
    tbruen@tbsglaw.com
4

5       24.     During the Annual Site Inspection, Plaintiffs and/or their representatives shall

6   be allowed access to the Hauling Facilities' SWPPPs and M&RPs.  In addition, during the

7   Annual Site Inspection, Plaintiffs and/or their representatives may collect split samples of

8   discharges from QSEs at the Hauling Facilities, consistent with the sampling requirements

9   of the Storm Water Permit.  Plaintiffs shall provide Defendants with properly preserved

10  split samples.  Plaintiffs shall submit any samples collected by them or their representatives

11  to a certified California laboratory for analysis.  Any onsite measurements by Plaintiffs

12  such as pH shall be taken by a properly trained operator with properly calibrated

13  instruments.  Defendants shall have an opportunity to take concurrent measurements using

14  their own equipment.  Copies of the complete laboratory reports shall be provided to

15  Defendants within ten (10) business days of receipt.  Plaintiffs shall bear all costs of

16  inspection, sampling, and analysis.

17      25.     Reporting and Documents.  Until the Termination Date of this Agreement,

18  Defendants shall copy Plaintiffs on all final documents related to storm water discharges

19  at the Hauling Facilities that are required to be submitted by the Storm Water Permit and

20  are submitted to the Regional Board and/or State Board, and/or any State or local agency

21  or municipality.  Such reports and documents shall be provided to Plaintiffs concurrently

22  as they are sent to the agencies and/or municipalities.  Until the Termination Date of the

23  Agreement, any material correspondence related to Defendants' compliance with the Storm

24  Water Permit or storm water discharges received by any Defendant from any regulatory

25  agency, State or local agency, county or municipality shall be provided to Plaintiffs within

26  ten (10) business days of receipt by Defendant(s).

27      26.     Compliance Monitoring and Oversight.  Defendants shall pay a combined

28  total of  fifteen thousand  dollars ($15,000) to compensate Plaintiffs for costs and fees to

be incurred for monitoring the Hauling Facilities' compliance with this Agreement, including, but not limited to, anticipated costs and fees related to Annual Site Inspections. Payment shall be made within thirty (30) days of the Effective Date payable to Coastal Environmental Rights Foundation via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

27.    <u>Action Plan Payment</u>.  Defendants shall pay a combined total of five thousand ($5,000) per Action Plan, deemed to be full payment for all of Plaintiffs' costs to review and comment on any Action Plan submitted.  Payment shall be made within thirty (30) days of the submittal of an Action Plan and payable to Coastal Environmental Rights Foundation via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

## V.    **Environmental Project, Reimbursement of Fees and Costs, and Stipulated Payments.**

28.    <u>Environmental Project</u>.   To remediate the alleged environmental harms resulting from non-compliance with the Storm Water Permit alleged in the Complaint, Defendants together agree to make a combined total payment of twenty thousand dollars ($20,000) to San Diego Canyonlands to fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities on the Southern California Bight and its tributaries.  Payment shall be made payable to: San Diego Canyonlands, Attention Clayton Tschudy, 5106 Federal Boulevard #205, San Diego, CA, 92105 within thirty (30) days of the Effective Date of this Agreement.  Any Party may request an end-of-expenditure update from San Diego Canyonlands.

29.    <u>Reimbursement of Attorneys' Fees and Costs</u>.  Defendants together shall pay a combined total of fifty thousand dollars  ($55,000) to Coast Law Group, LLP and San Diego Coastkeeper to reimburse investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Agreement.  Payments shall be made within thirty (30) days of the Effective Date and payable to: Coast Law Group, LLP, Attn: Livia Borak Beaudin

via certified U.S. Mail or commonly accepted carrier to 1140 South Coast Highway 101 Encinitas, California 92024.

30. <u>Stipulated Payments</u>.    Defendants together shall make a combined remediation payment of  one thousand five hundred dollars ($1,500) as the sole remedy for each missed deadline included in this Agreement, not excused by Force Majeure or agreement by Plaintiffs.    Payments for a missed deadline shall be used to fund environmental project activities that will benefit the Southern California Bight and its tributaries.  Defendants shall have thirty (30) days from notification to cure any missed deadline (i.e., submit the outstanding deliverable) or, in the alternative, invoke the Dispute Resolution Procedures set forth in Section VI below.    Unless Dispute Resolution Procedures have been invoked, Defendants agree to make the stipulated payment within thirty (30) days of notification of a missed deadline to San Diego Canyonlands.  Defendants shall provide Plaintiffs with a copy of each such payment at the time it is made.

## VI.    DISPUTE RESOLUTION.

31.    This Court shall retain jurisdiction over this matter until the Termination Date for the purposes of implementing and enforcing the terms and conditions of this Agreement and adjudicating all disputes among the Parties that may arise under the provisions of this Agreement.  The Court shall have the power to enforce this Agreement with all available legal and equitable remedies, including contempt.

32.    <u>Meet and Confer</u>.  A Party to this Agreement shall invoke the dispute resolution procedures ("Dispute Resolution Procedures") of this Section by notifying all other Parties in writing of the matter(s) in dispute.  The Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) business days from the date of receipt of the notice. Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

33.    <u>Formal Dispute Resolution</u>.  If the Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the Party initiating the Dispute Resolution

Procedures may invoke formal dispute resolution ("Formal Dispute Resolution") by filing a motion before the United States District Court for the Southern District of California. The Parties agree to request an expedited hearing schedule on the motion if requested by any Party.  The Formal Dispute Resolution process described in this Section VI shall be the sole and exclusive remedy for judicially resolving and enforcing any and all disputes between the Parties regarding the subject matter of this Consent Decree.

34.    Burden of Proof.  The burden of proof for Formal Dispute Resolution shall be in accordance with applicable law.

34.1  In the event of any disagreement or dispute between Plaintiffs and Defendants over the necessity or appropriateness of implementing any particular BMP or set of BMPs, Defendants shall bear the burden of demonstrating that their BMPs, collectively, constitute BAT/BCT for the Hauling Facilities, or that they are in compliance with the terms of this Agreement.

35.    Costs and Fees.  The Parties shall be entitled to seek fees and costs incurred in filing or opposing any motion made to the Court for the purpose of Formal Dispute Resolution in Section VI, according to the costs and fees provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

36.    Force Majeure.  No Party shall be considered to be in default in the performance of any of its obligations under this Agreement when performance becomes impossible, illegal, or is prevented by circumstances beyond the Party's control, including Force Majeure, which includes any act of god, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or by any public authority or agency; inability to proceed due to pending litigation under the California Environmental Quality Act; action or non-action by, or inability to obtain the necessary authorizations, approvals, or permits from, any governmental agency; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available, though the cost of such material or equipment is

not a factor in whether it is reasonably available; equipment damage that is beyond Defendants' control; and other unforeseeable circumstances beyond the control of the Parties and which the affected Party cannot avoid even by using its best efforts. Impossibility and/or Force Majeure shall not include normal inclement weather.  Except in the case of any catastrophic event that precludes normal banking and funds transfers such as emergency closing of the Federal Reserve Banking system, financial inability to pay for improvements will not be considered to be circumstances beyond Defendants' control. Any Party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance.  Delay in compliance with a specific obligation under this Agreement due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Agreement.

36.1   If Defendants seek to rely upon paragraph 36 to excuse or postpone performance, they shall notify Plaintiffs in writing as soon as possible, but in no event more than fifteen (15) business days of the date that Defendants learn of the event or circumstance that caused or would cause a violation of this Agreement (hereinafter referred to as the "Notice of Nonperformance").  Failure to send a Notice of Nonperformance shall not be a missed deadline.

36.2   Within thirty (30) days of sending the Notice of Nonperformance, Defendants shall send Plaintiffs a detailed description of the reason for the nonperformance and the specific obligations under the Agreement that are or have been affected by the Force Majeure.  They shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendants to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance.  Defendants shall adopt all reasonable measures to avoid and minimize such delays.  Failure to send such description shall not be a missed deadline.

36.3    The Parties shall meet and confer in good faith concerning the non-performance and, where the Parties concur that Defendants' nonperformance is excused or postponed pursuant to paragraph 36, despite the timely good faith efforts of the Parties, new deadlines shall be established.

36.4    If the Parties disagree on a Notice of Nonperformance, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, or on an extension of time to informally resolve their disagreement, either Party shall have the right to invoke the Dispute Resolution Procedures.  If the disagreement cannot be resolved informally and Formal Dispute Resolution is invoked, Defendants shall bear the burden during Formal Dispute Resolution of proving that any delay in performance of any requirement of this Agreement was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

## VII.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE.

37.    <u>Plaintiffs' Release</u>.  Upon the Effective Date of this Agreement, CERF and Coastkeeper, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, attorneys, and other representatives, release all persons including, without limitation, Defendants (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waive all claims alleged in this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Plaintiffs' Notice Letter and/or Complaint and/or the Formal Dispute Resolution Process in Section VI up to the Termination Date of this Agreement, except for fees and costs that may be awarded in connection with the Formal Dispute Resolution Process pursuant to paragraph 33.

38.    <u>Defendants' Release</u>.    Upon the Effective Date of this Agreement, Defendants, on their own behalf and on behalf of their current and former officers,

directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives, release Plaintiffs (and their current and former officers, directors, employees, members, direct and indirect parents, subsidiaries, and affiliates, and each of their successors and assigns, and their agents, attorneys, and other representatives) from and waive all claims alleged in this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Plaintiffs' Notice Letter and/or Complaint and/or the Formal Dispute Resolution Process in Section VI up to the Termination Date of this Agreement, except for fees and costs that may be awarded in connection with the Formal Dispute Resolution Process pursuant to paragraph 33.

39.   Nothing in this Agreement limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Defendants' compliance with the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date of this Agreement.

40.   The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations, matters and claims as set forth in the 60-Day Notice for storm water pollution discharges at the Hauling Facilities and/or this Consent Decree up to and including the Termination Date of this Agreement, except in connection

with the Formal Dispute Resolution Process related to violations or breaches of this Agreement.

## VIII.  **MISCELLANEOUS PROVISIONS.**

41.   <u>No Admission of Liability</u>.  Neither this Agreement, the implementation of additional BMPs, nor any payment pursuant to the Agreement shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

42.   <u>Construction</u>.  The language in all parts of this Agreement shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

43.   <u>Choice of Law</u>.  The laws of the United States and of the State of California for state law questions shall govern this Agreement.

44.   <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

45.   <u>Correspondence</u>. Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiff Coastkeeper</u>:

San Diego Coastkeeper
Attn: Matt O'Malley
2825 Dewey Rd, Suite 207
San Diego, CA 92106
Email: <u>matt@sdcoastkeeper.org</u>

<u>If to Plaintiff CERF</u>:

Coastal Environmental Rights Foundation
Attn: Sara Kent

1140 South Coast Highway 101
Encinitas, CA 92024
Email: sara@cerf.org

With Copy to:

Coast Law Group LLP
Attn: Livia Beaudin
1140 South Coast Hwy 101
Encinitas, CA 92024
Email: livia@coastlawgroup.com

If to Defendants:

Scott Sterner
General Manager
8364 Clairemont Mesa Blvd.
San Diego, CA 92111
(619) 449-9026
ssterner@republicservices.com

With Copies to:

Judith George / Tom Ulreich-Power
General Counsel's Office
Republic Services
18500 North Allied Way
Phoenix, AZ 85054
Email: Jgeorge4@republicservices.com
Email: Tulreich@republicservices.com

Thomas Bruen
Law Offices of Thomas M. Bruen, P.C.
1990 North California Blvd., Suite 608
Walnut Creek, California 94596
E-mail: tbruen@tbsglaw.com

46.    Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail.    Any change of address or addresses shall be

communicated in the manner described above for giving notices.

47.    <u>Effect of Consent Decree</u>.  Except as provided herein, Plaintiffs do not, by their consent to this Consent Decree, warrant or aver in any manner that Defendants' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation.  Nothing in this Consent Decree shall be construed to affect, limit, or increase in any way the obligation of Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

48.    <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

49.    <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

50.    <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter. Plaintiffs shall promptly dismiss with prejudice Defendant Republic Services, Inc. following approval of this consent decree by the Department of Justice.

51.    <u>Integration Clause</u>.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

52.    <u>Authority of Counsel</u>.  The undersigned representatives for Plaintiffs and Defendants each certify that he/she is fully authorized by the Party whom he/she represents to enter into the terms and conditions of this Consent Decree.

53.    <u>Authority of Parties</u>.    Each Party certifies that its undersigned representative(s) is fully authorized to enter into this Consent Decree, to execute it on

behalf of that Party, and to legally bind that Party to the terms of this Consent Decree.

54.    The Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated:        July 21, 2020                By: s/ Catherine Stiefel
                                            Name: Catherine Stiefel
                                            Title: Board President
                                            San Diego Coastkeeper

Dated:        July 21, 2020                By: s/Sara Kent
                                            Name: Sara Kent
                                            Title: Programs Director
                                            Coastal Environmental Rights Foundation

Dated:        July 21, 2020                By: s/ J. Perrilliat
                                            Name: J. Perrilliat
                                            Title: Vice President
                                            Allied Waste Systems, Inc. and Tayman Industries, Inc.

APPROVED AS TO FORM

Dated:        July 21, 2020                By: s/Livia Borak Beaudin
                                            Livia Borak Beaudin
                                            Coast Law Group LLP
                                            Attorneys for CERF

Dated:        July 21, 2020                By: s/Matt O'Malley
                                            Matt O'Malley

1                                  Attorney for San Diego Coastkeeper

2

3

4   Dated:     July 21, 2020           By: s/Thomas Bruen

5                                    Thomas Bruen

6                                    Law Offices of Thomas M. Bruen, P.C.

7                                    Attorney for Allied Waste Systems, Inc., and Tayman Industries, Inc.

8

9   **IT IS SO ORDERED.**

10

11

12   Dated:  July 22, 2020

13                                    Hon. Cathy Ann Bencivengo

14                                    United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28